United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GABRIELA OLIVEIRA MENDONCA,
Plaintiff,

v.

SERGIO ALBARRAN, et al.,
Defendants.

Case No. 26-cv-10485-TLT

**ORDER GRANTING PRELIMINARY INJUNCTION**

Re: Dkt. No. 6

On September 15, 2026, Petitioner-Plaintiff Gabriela Oliveira Mendonca ("Petitioner-Plaintiff"), filed a Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief. ECF 1. In her habeas petition, Petitioner-Plaintiff alleged that she was detained without notice or a hearing in violation of the Administrative Procedure Act ("APA") and her procedural due process rights under the Fifth Amendment. ECF 1 ¶¶ 1–7, 68–75. Petitioner-Plaintiff filed an *ex parte* application for temporary restraining order ("TRO") the same day. ECF 2.

The Court granted the TRO and ordered Respondent-Defendants to immediately release Petitioner-Plaintiff from custody. ECF 6 at 3. The Court also enjoined Respondents-Respondents from: (1) re-detaining Petitioner-Plaintiff without notice and a pre-detention hearing before a neutral decisionmaker; and (2) deporting Petitioner-Plaintiff pending these habeas proceedings. ECF 6 at 3. The TRO required Respondents-Defendants to show cause why a preliminary injunction should not be issued. ECF 6 at 2. Respondents-Defendants timely filed their response to the order to show cause on September 21, 2026. ECF 9.

On September 25, 2026, Petitioner-Plaintiff filed an amended habeas petition ("Amended Petition"), which asserts four claims against Respondents-Defendants. ECF 10. In her First and Second Causes of Action, Petitioner-Plaintiff alleges that the government violated the APA and her procedural due process rights by detaining her in the airport on September 15, 2026 without

providing her with notice or a pre-detention hearing before a neutral decisionmaker.[1] ECF 10 ¶¶ 21–24; 80–87. In her Third Cause of Action, Petitioner-Plaintiff alleges that the government violated 8 U.S.C. § 1226(a) and her Fourth Amendment rights by subjecting her to civil immigration detention without a valid warrant. ECF 10 ¶¶ 88–92. In her Fourth Cause of Action, Petitioner-Plaintiff alleges that the government violated this Court's TRO and her procedural due process rights by placing her an Order of Release on Recognizance ("OREC") when she was released from civil immigration detention. ECF 10 ¶¶ 93–96.

On the same day that she filed her Amended Petition, Petitioner-Plaintiff also filed a traverse in support of her request for preliminary injunctive relief. ECF 11.

On September 29, 2026, the Court held a preliminary injunction hearing and found good cause to extend the TRO. ECF 12. The Court set a briefing schedule that gave the government the opportunity to respond to the new allegations in the Amended Petition and set a status conference for October 13, 2026 at 9:00 a.m. ECF 12; ECF 13. The parties' responsive briefing is now complete, and the matter is before the Court for decision.[2] ECF 14; ECF 15.

The Court finds that the matter is appropriate for resolution without oral argument pursuant to Civil Local Rule 7-1(b). Accordingly, the November 3, 2026 hearing on the motion is hereby **VACATED.**

Having considered the parties' briefs, oral presentations, the relevant legal authority, and for the reasons below, the Court **GRANTS** preliminary injunctive relief.

## I. FACTUAL BACKGROUND

Petitioner-Plaintiff is a Brazilian national who entered the United States on March 6, 2014

---

[1] To the extent that Petitioner-Plaintiff's APA claim seeks redress for other alleged wrongdoing committed by Respondents-Defendants, such allegations are encompassed within Petitioner-Plaintiff's other claims.

[2] The Court notes that Respondents-Defendants' response to the new allegations in Plaintiff's Amended Petition (ECF 14) was filed after the October 6, 2026 4:00 p.m. deadline set by the Court. ECF 13 at 2. Respondents-Defendants also failed to properly notice the motion to dismiss and submit a proposed order. *See* ECF 16 at 2; Civ. L.R. 7-1, 7-2. However, in light of the statement of counsel filed at ECF 16, the Court will not strike Respondents-Defendants' untimely response or enter default. In any case, these errors do not prejudice Petitioner-Plaintiff given the final disposition.

on a J-1 visa. ECF 10 ¶ 12; ECF 10-1 ¶ 3. She was enrolled in the Au Pair Program and later applied to change her status to that of a B-2 visitor. ECF 10-1 ¶¶ 4–5. The government approved her application, as well as subsequent applications to extend her B-2 status. ECF 10-1 ¶ 5. Petitioner-Plaintiff fell out of lawful status in 2019.[3] ECF 10-1 ¶ 6.

Petitioner-Plaintiff has flown within the United States 20 to 30 times since she fell out of lawful status. ECF 10-1 ¶ 6. She has worked sporadically in the United States and obtained an associate's degree from the College of Marin. ECF 10-1 ¶ 7.

Petitioner-Plaintiff has lived in the United States for 12 years and became engaged to a U.S. citizen in August 2025. ECF 10-1 ¶¶ 6–7. She lives with her fiancée in the Bay Area and plans to get married in December 2026. ECF 10-1 ¶¶ 6–7. Once she gets married, Petitioner-Plaintiff will be *prima facie* eligible for adjustment of status to a lawful permanent resident under 8 U.S.C. § 1255(a). ECF 10-1 ¶ 7. Petitioner-Plaintiff does not have any criminal convictions. ECF 10-1 ¶ 7.

On September 15, 2026, Petitioner-Plaintiff and her fiancée were traveling together from San Francisco International Airport to New York. ECF 10-1 ¶ 8. At the gate, Petitioner-Plaintiff was approached by Immigration and Customs Enforcement ("ICE") officials. ECF 10-1 ¶ 8. One of the agents showed Petitioner-Plaintiff an administrative warrant that was dated September 14, 2026. ECF 10-1 ¶ 8; ECF 10-2 at 2. ICE informed Petitioner-Plaintiff that she was under arrest but allowed her to use the restroom and walk through public areas of the airport without restraints. ECF 10-1 ¶ 9. Once Petitioner-Plaintiff was no longer within view of the public or her fiancée, ICE agents began taking her personal belongings and handcuffing her. ECF 10-1 ¶ 10. They forced her into a van and shackled her. ECF 10-1 ¶ 10. At this time, Petitioner-Plaintiff purportedly bit an ICE agent. ECF 10-1 ¶ 10; *see also* ECF 9-2 at 9–13.

ICE transported Petitioner-Plaintiff to 630 Sansome Street in San Francisco, California and told her that she would be transferred to a detention facility at 3:00 p.m. that day. ECF 10-1 ¶ 11. While she was at the Sansome Street facility, ICE served Petitioner-Plaintiff with a notice to appear

[3] There is some inconsistency in the record regarding when Petitioner-Plaintiff fell out of lawful status, as ECF 9-2 indicates that Petitioner-Plaintiff's J-1 visa expired on October 23, 2020. ECF 9-2 at 2.

("NTA") that initiated removal proceedings against Petitioner-Plaintiff. ECF 10-1 ¶ 11. The NTA was dated September 15, 2026—one day after the date of the administrative warrant authorizing her arrest. ECF 10-1 ¶ 11; ECF 9-2 at 2–4.

Thereafter, Petitioner-Plaintiff filed her original habeas petition and an *ex parte* motion for a TRO. ECF 1; ECF 2. The Court granted the TRO (ECF 6), and Petitioner-Plaintiff was subsequently released by ICE that same evening (ECF 7). Petitioner-Plaintiff was released pursuant to an OREC, which requires her to appear at ICE for check-ins, provide ICE with her address and phone number, and comply with other conditions. ECF 10-1 ¶ 13; ECF 10-2 at 4–7.

On September 18, 2026, at approximately 7:50 a.m., Petitioner-Plaintiff was arrested pursuant to a federal criminal warrant on a felony charge of assaulting a federal agent under 18 U.S.C. § 111(a) because she allegedly bit an ICE officer while being shackled in an ICE van. ECF 8; ECF 9 at 1; ECF 10-1 ¶ 15. Petitioner-Plaintiff was released on a $10,000 unsecured bond later that day. ECF 10-1 ¶ 16; ECF 10-2 at 9. As a condition of her release in her criminal case, Petitioner-Plaintiff may not travel outside the Northern District of California. ECF 10-2 at 9. Petitioner-Plaintiff's criminal case remains pending. ECF 10-1 ¶ 16.

## II. LEGAL STANDARD

### A. Preliminary Injunction

The standard for issuing a preliminary injunction is virtually identical to the standard for issuing a TRO. *See Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) ("[T]he legal standards applicable to TROs and preliminary injunctions are substantially identical.") (citation and internal quotation marks omitted). An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008).

A plaintiff seeking preliminary injunctive relief must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Id.* at 20. "[I]f a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction

United States District Court
Northern District of California

may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (cleaned up). "[W]hen the Government is the opposing party," the final two factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

### B. Due Process Clause

The Due Process Clause of the Fifth Amendment to the United States Constitution states that "[n]o person shall … be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. It is settled law that the Due Process Clause applies to noncitizens within the United States "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Once a protected liberty interest is identified, the Court determines what process is required by weighing the three *Mathews v. Eldridge* factors. 424 U.S. 319, 335 (1976). "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.*

## III. DISCUSSION

For the reasons explained below, the Court finds that Petitioner-Plaintiff is entitled to preliminary injunctive relief solely with respect to her Second Cause of Action. As Petitioner-Plaintiff's Second Cause of Action "affords [her] all the relief to which [she] is entitled—namely release and a pre-deprivation hearing prior to re-detention—the Court need not and does not reach" her First or Third Causes of Action. *Bhandohal v. Cruz*, No. 1:26-CV-04833 (EJD), 2026 WL 1954502, at *2 (E.D. Cal. July 6, 2026); *see also Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263, at *5 (N.D. Cal. Aug. 21, 2025).

With respect to her Fourth Cause of Action, Petitioner-Plaintiff fails to establish that the government violated her due process rights by subjecting her to an OREC. Due process may require the government to provide non-citizens with notice and a hearing before subjecting them to onerous custodial restrictions, such as ankle monitors and enrollment in ICE's Intensive Supervision

Appearance Program ("ISAP"). *See, e.g., Harrington v. Albarran*, No. 26-CV-01889-JST, 2026 WL 800113, at *4 (N.D. Cal. Mar. 23, 2026) ("Accordingly, as multiple sister courts have done on similar facts, the Court finds that the government is violating Harrington's due process rights by subjecting him to ankle monitoring and ISAP supervision without notice and a hearing to determine whether those measures are warranted."); *Abdeltawab v. Armant*, No. EDCV 26-01520-MWF (DTB), 2026 WL 1710301, at *2 (C.D. Cal. June 4, 2026) ("The sum of Petitioner's [ankle] monitoring, ISAP enrollment, and geographic restriction therefore constitutes custody in the habeas context and within the meaning of the Preliminary Injunction. Respondents have effectively returned Petitioner to custody, rather than the status quo before the controversy, without providing the notice and pre-detention hearing required by the Preliminary Injunction."). Here, however, Petitioner-Plaintiff merely alleges that the OREC "imposes numerous restrictions on her liberty, including requiring that she attend check-ins at ICE and inform ICE of her address and phone number." ECF 10 ¶ 72. She does not show that the OREC violates her due process rights or effectively returns her to custody in violation of the Court's TRO. *See Abdeltawab*, 2026 WL 1710301, at *2.

Thus, this Order only addresses the merits of Petitioner-Plaintiff's Second Cause of Action.

### A. Administrative Exhaustion is Not Required.

As a threshold matter, Respondents-Defendants assert that Petitioner-Plaintiff should be required to exhaust her administrative remedies before she may seek relief from this Court. ECF 9 at 4–5. Petitioner-Plaintiff disagrees and argues that there are no administrative remedies that she needs to exhaust. ECF 10 ¶¶ 10–11. The Court agrees with Petitioner-Plaintiff. As the Ninth Circuit has recognized, for habeas claims, "[t]he exhaustion requirement is prudential, rather than jurisdictional." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). Even if a habeas petitioner fails to prudentially exhaust her administrative remedies, prudential exhaustion may be waived if a habeas petitioner demonstrates that: "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Singh v. Barr*, No. 20-CV-02346-VKD, 2020 WL 1929366, at *5 (N.D. Cal. Apr. 20, 2020) (citation and internal quotation marks omitted).

United States District Court
Northern District of California

Here, Petitioner-Plaintiff asserts a procedural due process claim that challenges the constitutionality of her detention by ICE without a pre-deprivation hearing. ECF 10 ¶¶ 83–87. Since her procedural due process challenge "concern[s] the constitutionality of an agency action prior to [any] bond hearing, [it] fall[s] beyond the jurisdiction of the Board of Immigration Appeals." *Chaparro Ayala v. Albarran*, No. 26-CV-09430-CRB, 2026 WL 2722780, at *1, *3–7 (N.D. Cal. Sept. 15, 2026) (granting preliminary injunction and declining to require exhaustion of administrative remedies, where noncitizen who overstayed his tourist visa was detained by ICE agents at an airport without a pre-detention hearing in violation of his procedural due process rights); *Kharitonova v. Albarran*, No. 3:26-CV-01362-JSC, 2026 WL 2654723, at *1–3 (N.D. Cal. Sept. 8, 2026) (granting preliminary injunction to asylum seeker who was detained without a pre-deprivation hearing in violation of her due process rights and rejecting the government's argument that petitioner was required to exhaust her administrative remedies before bringing due process claims). Accordingly, requiring administrative exhaustion would be futile. *See Chaparro Ayala*, 2026 WL 2722780, at *7 n.5; *Kharitonova*, 2026 WL 2654723, at *2 n.2.

**B. All the *Winter* Factors Are Satisfied.**

**1. Petitioner-Plaintiff is Likely to Succeed on the Merits of Her Due Process Claim.**

Petitioner-Plaintiff demonstrates that she "is likely to succeed in [her] Fifth Amendment procedural due process claim, or at minimum, that it presents a serious question going to the merits which, when combined with the other *Winter* factors, is sufficient for preliminary relief." *Chaparro Ayala*, 2026 WL 2722780, at *3 (footnote omitted). Although Respondents-Defendants assert that the *Mathews* factors do not apply to procedural due process claims in the immigration detention context (ECF 9 at 3–4), their argument is belied by relevant Ninth Circuit precedent and persuasive authority from this district. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206–14 (9th Cir. 2022) ("assum[ing] without deciding that *Mathews* applies," but applying the *Mathews* factors in the context of a due process challenge to 8 U.S.C. § 1226(a)'s procedures); *see also Chaparro Ayala*, No, 2026 WL 2722780, at *3; *Holani v. Albarran*, No. 26-CV-08013-NW, 2026 WL 2654823, at *7 (N.D. Cal. Sept. 8, 2026); *Alva Alva v. Kaiser*, No. 25-CV-06676-RFL, 2025 WL 2419262, at *4 (N.D. Cal. Aug. 21, 2025). Like other Courts in this District, the Court holds that the *Mathews*

factors apply.

**a. Private Interest**

Respondents-Defendants argue that Petitioner-Plaintiff does not have a constitutionally protected liberty interest in her continued freedom because she had never been detained before September 15, 2026 and had no prior encounters with immigration officials. ECF 9 at 3. Petitioner-Plaintiff, by contrast, argues that she has a liberty interest in her freedom from detention. ECF 10 ¶¶ 30–41. She has lived in the United States for 12 years, obtained her associate's degree from a local college in the Bay Area, traveled via domestic airlines 20 to 30 times since falling out of lawful status without incident, and became engaged to a U.S. citizen. ECF 10-1 ¶¶ 6–7. The Court agrees with Petitioner-Plaintiff and holds that she has a protected liberty interest in her continued freedom.

Recent decisions from other Courts in this District support Petitioner-Plaintiff's argument that she has a protected liberty interest even though she had no prior encounters with immigration officials before September 15, 2026. *See Chaparro Ayala*, 2026 WL 2722780, at *3–4. For example, in *Chaparro Ayala*, the Court held that the petitioner had a protected liberty interest in his continued freedom, even though he "did not have a single incident of contact with any federal government agency prior to his detention." 2026 WL 2722780, at *4 (emphasis and internal quotation marks omitted). Like Petitioner-Plaintiff, the petitioner in *Chaparro Ayala* had overstayed his tourist visa and was detained at the airport while traveling with his partner. *See id.* at *1. Although he had never been detained before, the Court held that the petitioner had a liberty interest in his freedom because of his long-term residency in the San Francisco Bay Area, sustained employment, and strong community ties. *See id.* at *4. Similar principles apply here. ECF 10-1 ¶¶ 6–7.

The Court's recent decision in *Holani v. Albarran*, 2026 WL 2654823, is also instructive. In *Holani*, the Court held that a petitioner who had overstayed his visa waiver program authorization had a liberty interest in remaining free from detention, as he had lived openly in the United States for three years, cared for his grandmother, and was involved in his local church and youth community. *Id.* at *1, *7. The Court further noted that his liberty interest was "strengthened by the fact that [petitioner] ha[d] at least three times travelled by flight between Seattle and Oakland, such

that DHS, through TSA, was necessarily aware of [petitioner] on each of his previous commercial flights, yet they allowed him to present himself at the security check point and continue on his way." *Id.* at *7. Like the petitioner in *Holani*, Petitioner-Plaintiff has lived openly in the United States for years. ECF 10-1 ¶¶ 6–7. Moreover, Petitioner-Plaintiff has flown more frequently than the petitioner in *Holani* and was never detained prior to September 15, 2026. ECF 10-1 ¶ 6.

Under the first *Mathews* factor, Petitioner-Plaintiff's private interest in her continued freedom is significant. *See Chaparro Ayala*, 2026 WL 2722780, at *3–4; *Holani*, 2026 WL 2654823, at *7. She has lived in the United States for over a decade and has developed significant ties to the Bay Area. ECF 10-1 ¶¶ 6–7. Thus, despite Respondents-Defendants' attempts to argue otherwise, Petitioner-Plaintiff is not asserting "a facial challenge to the constitutionality of detention under 8 U.S.C. § 1226(a) without a pre-deprivation hearing." ECF 9 at 3. Based on a review of her Amended Petition, Petitioner-Plaintiff is plainly asserting an as-applied challenge to her detention without notice and a pre-deprivation hearing. *See generally* ECF 10. She does not allege that all non-citizens are entitled to pre-detention hearings under 8 U.S.C. § 1226(a). *See generally* ECF 10. Even if she did assert a facial challenge, the Court would decline to entertain it, as the Ninth Circuit has held that Section 1226(a)'s procedures facially satisfy due process. *Rodriguez Diaz*, 53 F.4th at 1213.

Therefore, Petitioner-Plaintiff has a constitutionally protected liberty interest in her continued freedom, and the first *Mathews* factor weighs in her favor.

**b. Risk of Erroneous Deprivation**

Respondents-Defendants argue that Petitioner-Plaintiff is a danger to the community because she allegedly bit an ICE officer while she was being arrested at the airport. ECF 9 at 1. Accordingly, Respondents-Defendants contend that her detention under 8 U.S.C. § 1226(a) is appropriate, and that her due process rights are adequately protected because she is entitled to a custody determination under Section 1226(a). ECF 9 at 2–3. The Court disagrees.

"Because immigration detention is civil and not criminal in nature, it is constitutionally permissible only when it serves a legitimate purpose, *i.e.*, 'ensuring the appearance of aliens at future immigration procedures' and '[p]reventing danger to the community.'" *Holani*, 2026 WL 2654823,

at *8 (citation omitted). Although Petitioner-Plaintiff was arrested pursuant to a federal criminal warrant on a felony charge of assaulting a federal agent (ECF 8), this charge "does not alone suggest a broader danger to the community." *Ome Osorio v. Albarran*, No. 26-CV-08783-PCP, 2026 WL 2741855, at *4 (N.D. Cal. Sept. 16, 2026); *cf. Mucu Maaz v. Albarran*, No. 5:26-CV-08452-BLF, 2026 WL 2447545, at *3 (N.D. Cal. Aug. 20, 2026) ("[A]bsent evidence of urgent concerns, a pre-deprivation hearing is required even for noncitizens with new arrests for offenses such as driving under the influence since being released on bond and under Order of Release on Recognizance.") Indeed, when Respondents-Defendants chose to arrest Petitioner-Plaintiff at the airport without notice or pre-detention hearing, she had no criminal history and no prior encounters with immigration officials. *See Holani*, 2026 WL 265482, at *8; *Chaparro Ayala*, 2026 WL 2722780, at *5–6. As Petitioner-Plaintiff points out, her "alleged dangerousness was not the reason for her arrest [in the airport] in the first instance." ECF 10 ¶ 49. Thus, her procedural due process rights were likely already violated before the alleged biting incident occurred.

Likewise, Petitioner-Plaintiff correctly points out the Respondents-Defendants released her from detention on September 15, 2026 on an OREC, "necessarily determining that she was not a danger or flight risk" (ECF 10 ¶ 49). *Gopal B. v. Albarran*, No. 1:26-CV-01083-TLN-CKD, 2026 WL 504736, at *4 (E.D. Cal. Feb. 24, 2026) ("The current record shows a neutral arbiter has found Petitioner was not a danger to the community both before and after his October 2025 arrest. Without a redetermination that Petitioner's detention is justified and weighing Petitioner's current circumstances before an immigration judge, the risk of erroneous deprivation is high."), *enforced*, No. 1:26-CV-01083-TLN-CKD, 2026 WL 807587 (E.D. Cal. Mar. 24, 2026) . Similarly, in Petitioner-Plaintiff's criminal case, a magistrate judge released Petitioner-Plaintiff on bond (ECF 10 ¶ 49). *Cf. Hernandez v. Mullin*, No. 2:26-CV-07236-AB, 2026 WL 2622423, at *6 (C.D. Cal. Sept. 4, 2026). These determinations bely Respondents-Defendants' assertion that Petitioner-Plaintiff is a danger to the community.

The government asserts that Petitioner-Plaintiff is subject to discretionary detention under Section 1226(a). ECF 9 at 2. If re-detained, Petitioner-Plaintiff "would be entitled to a post-arrest bond hearing before an immigration judge." *Ome Osorio*, 2026 WL 2741855, at *4. However,

"[b]ecause such a hearing would occur after [her] detention and thereby result in a deprivation of [her] liberty until such a hearing occurs, . . . there remains a substantial risk that the government will erroneously deprive [Petitioner-Plaintiff] of h[er] liberty in the meantime." *Id.* As Respondents-Defendants have not shown that she is a flight risk or a danger to the community, "there is a significant risk that the deprivation of [her] liberty in the time between [her] arrest and a post-arrest bond hearing under § 1226 would be entirely unjustified." *Id.* at *5. Accordingly, providing Petitioner-Plaintiff with notice and a pre-deprivation hearing before any future detentions "will have significant value in helping ensure that any future detention has a lawful basis." *Id.* Therefore, the second *Mathews* factor weighs in Petitioner-Plaintiff's favor.

**c. Government Interest**

Respondents-Defendants suggest that they have an interest in detaining Petitioner-Plaintiff because of her arrest on the charge of assaulting a federal agent. ECF 9 at 2. However, "merely being arrested on a charge does not establish a criminal conviction that would actually allow the government to infer the noncitizen at issue can be assumed to be a danger to the community." *Ome Osorio*, 2026 WL 2741855, at *5. In addition, providing a pre-detention hearing to Petitioner-Plaintiff would not "impose a significant pose a significant financial or administrative burden, because such custody hearings are routine and impose a minimal cost." *Id.* (citation and internal quotation marks omitted). If Respondents-Defendants wish to re-detain Petitioner-Plaintiff, they need only provide her with notice and a pre-detention hearing before a neutral arbiter. *Chaparro Ayala*, 2026 WL 2722780, at *6. At any pre-detention hearing, the government must bear the burden of proving, by clear and convincing evidence, that Petitioner-Plaintiff is a flight risk or a danger to the community, "and that no conditions other than detention would be sufficient to prevent such harms." *Ome Osorio*, 2026 WL 2741855, at *6. Therefore, the third *Mathews* factor weighs in Petitioner-Plaintiff's favor.

In sum, all three *Mathews* factors weigh in Petitioner-Plaintiff's favor, and she has shown a likelihood of success on the merits.

**2. The Other *Winter* Factors Support Preliminary Injunctive Relief.**

Respondents-Defendants contend that Petitioner-Plaintiff cannot show a likelihood of

success or a serious question on the merits. ECF 9 at 5–6. Accordingly, they do not analyze the other *Winter* factors. ECF 9 at 5–6. The Court, however, finds that Petitioner-Plaintiff satisfies the first *Winter* factor. Therefore, it must examine the other factors.

With respect to the second *Winter* factor, Petitioner-Plaintiff points out that she has shown a likelihood of success on the merits of her procedural due process claim, and that "the deprivation of constitutional rights unquestionably constitutes irreparable injury." ECF 2 at 28–29 (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (citation omitted)); *see also Chaparro Ayala*, 2026 WL 2722780, at *6. Indeed, "[t]he likely unconstitutional deprivation of liberty that [Petitioner-Plaintiff] would face if [she] was subject to detention without a pre-deprivation bond hearing would constitute an immediate and irreparable harm." *Ome Osorio*, 2026 WL 2741855, at *5. Moreover, "[t]he Ninth Circuit has specifically recognized 'the irreparable harm imposed on anyone subject to immigration detention.'" *Chaparro Ayala*, 2026 WL 2722780, at *6 (quoting *Hernandez*, 872 F.3d at 994). Accordingly, Petitioner-Plaintiff satisfies the second *Winter* factor.

Regarding the third *Winter* factor, the balance of hardships tips in favor of Petitioner-Plaintiff. As Petitioner-Plaintiff points out (ECF 2 at 29), the government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1983; *see also Chaparro Ayala*, 2026 WL 2722780, at *6. Concerning the fourth *Winter* factor, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002 (citation and internal quotation marks omitted); *Chaparro Ayala*, 2026 WL 2722780, at *6. As such, Petitioner-Plaintiff satisfies the third and fourth *Winter* factors.

For the reasons explained above, Petitioner-Plaintiff satisfies all the *Winter* factors, and preliminary injunctive relief is therefore appropriate.

### C. Any Pre-Deprivation Hearing Should be Conducted by a Neutral Immigration Judge.

Petitioner-Plaintiff argues that any pre-detention hearing should be conducted by this Court, rather than by an immigration judge. ECF 10 ¶¶ 74–79. She raises significant concerns about the neutrality of immigration judges and points out that the "[t]he DOJ has actively hired 'deportation

judges' and describes the position as an opportunity to '[b]ring the hammer down on criminal illegal aliens . . . Defend your communities, your very way of life.'" ECF 10 ¶ 75 (citation omitted). Petitioner-Plaintiff further argues that immigration courts are supervised by the executive branch, that immigration judges are subject to significant political pressure, and that immigration judges have recently been fired *en masse*. ECF 10 ¶¶ 74–75.

The Court acknowledges Petitioner-Plaintiff's concerns that she will not receive a fair and neutral hearing in immigration court. *See Claros v. Albarran*, No. 25-CV-09473-EMC, 2026 WL 2364813, at *8 (N.D. Cal. Aug. 14, 2026). However, it is unclear whether the Court would even have the power to conduct pre-deprivation hearings. *See De La Garza v. Albarran*, No. 25-CV-10305-HSG, 2025 WL 3485157, at *5–6 (N.D. Cal. Dec. 4, 2025). Moreover, Courts in this District have generally declined to conduct pre-deprivation bond hearings. *See id.* at *6; *see also Claros*, 2026 WL 2364813, *8; *Garcia v. Albarran*, No. 25-CV-10617-JST, 2026 WL 891761, at *3 (N.D. Cal. Apr. 1, 2026). Thus, any pre-deprivation hearing must be conducted by a neutral immigration judge, rather than by this Court.[4]

## IV. CONCLUSION

For the reasons explained above, Petitioner-Plaintiff has shown that she has a liberty interest in her continued freedom, and that her procedural due process rights were likely violated when Respondents-Defendants detained her in the airport on September 15, 2026 without notice and a pre-deprivation hearing. Petitioner-Plaintiff would suffer further irreparable harm if she were detained again in violation of her constitutional rights, and the balance of hardships tips in her favor. Thus, she is entitled to preliminary injunctive relief.

Accordingly, Respondents-Defendants are **ENJOINED** and **RESTRAINED** from arresting, detaining, or removing Petitioner-Plaintiff from this District during the pendency of these proceedings without prior notice and a pre-detention hearing before a neutral immigration judge.

[4] Since Petitioner-Plaintiff is not currently detained and Respondents-Defendants are enjoined from re-detaining her without notice and a pre-deprivation hearing, the Court does not reach Petitioner-Plaintiff's request to enjoin her transfer to another district if she is re-arrested. *Garcia v. Albarran*, No. 26-CV-04839-EKL, 2026 WL 1879641, at *8 n.9 (N.D. Cal. June 30, 2026).

United States District Court
Northern District of California

At such pre-detention hearing, the government shall bear the burden of proving, by clear and convincing evidence, that Petitioner-Plaintiff is a danger to the community or a flight risk and that no conditions other than detention would be sufficient to prevent such harm.

This Order does not prevent the government from executing a final order of removal if one is entered against Petitioner-Plaintiff.[5] Nor does this Order address the circumstances under which Petitioner-Plaintiff may be subject to criminal detention as part of her pending criminal matter (No. 3:26-MJ-71223-MAG-1).[6]

IT IS SO ORDERED.

Dated: October 29, 2026

TRINA L. THOMPSON
United States District Judge

[5] This Order does not address the circumstances under which Petitioner-Plaintiff may be re-detained in order for the government to execute a final order of removal if one is entered against Petitioner-Plaintiff.

[6] The Ninth Circuit has noted, in another context, that "detention of a criminal defendant pending trial pursuant to the [Bail Reform Act] and detention of a removable alien pursuant to the [Immigration and Nationality Act] are separate functions that serve separate purposes and are performed by different authorities." *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019) (citation and internal quotation marks omitted). The Court need not and does not consider the interplay between the BRA and the INA but merely notes that this habeas action and Petitioner-Plaintiff's pending criminal matter are separate actions proceeding on separate tracks.